UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  17-cv-22749-JEM

SEUL SANTIAGO,

      Plaintiff,

v.

JAGUAR THERAPEUTICS, LLC,
a Florida Limited Liability Company;
DOWNTOWN SPORTFIT REHAB &
TRAINING, INC., a Florida for-profit
Corporation; and CHRISTOPHER
HERRERA, individually,

      Defendants.

_____/

**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT
AS TO COUNT II AND SUPPORTING MEMORANDUM OF LAW**

PATHMAN LEWIS, LLP
*Attorneys for Defendants*
**JOHN A. MOORE, ESQ.**
Florida Bar No.: 91820
jmoore@pathmanlewis.com
**AARON W. TANDY, ESQ.**
Florida Bar No.: 190144
atandy@pathmanlewis.com
One Biscayne Tower, Suite 2400
Two S. Biscayne Boulevard
Miami, Florida 33131
Phone No: (305) 379-2425
Fax No:   (305) 379-2420

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ ii

Background ........................................................................................................... 1

Facts .................................................................................................................... 2

Statement of Law .................................................................................................. 8

Argument .............................................................................................................. 9

    A.  Plaintiff Cannot Make Out a Prima Facie Claim for Retaliation ..................... 11

    B.  Legitimate, Non-pretextual Reason for Terminating Plaintiff
       Entitles Defendants to Summary Judgment ................................................. 17

Conclusion ........................................................................................................... 20

Certificate of Service ............................................................................................ 20

## TABLE OF AUTHORITIES

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970) ................................................................................8

*Alexander v. Fulton Cnty.,*
207 F.3d 1303 (11th Cir. 2000) ...........................................................10

*Alvarado v. I.G.W.T. Delivery Syst., Inc.,*
410 F. Supp.2d 1272 (S.D. Fla. 2006) ...................................11, 13, 14

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..............................................................................8, 9

*Austin v. Compass Group,*
2014 U.S. Dist. LEXIS 798 (N.D. Ala. Jan. 6, 2014) .......................11

*Batey v. Stone,*
24 F.3d 1330 (11th Cir. 1994) ..............................................................8

*Brungart v. BellSouth Telecommunications, Inc.,*
231 F.3d 791 (11th Cir. 2000)..........................................................16, 17

*Burke-Fowler v. Orange Cnty.,*
Fla., 447 F.3d 1319 (11th Cir. 2006) ..................................................10

*Cabrera v. Town of Lady Lake,*
2013 U.S. Dist. LEXIS 201324 (M.D. Fla. Mar. 28, 2013) ..........15, 17

*Celotex Corp.  v. Catrett,*
477 U.S. 317 (1986)..............................................................................8, 9

*Chapman v. AI Trans.,*
229 F.3d 1012 (11th Cir. 2000) .......................................................10, 12

*Clark v. Alabama,*
141 Fed. App'x 777 (11th Cir. 2005) ..................................................19

*Combs v. Plantation Patterns,*
106 F.3d 1519 (11th Cir. 1997) ............................................................9

*Dorsey v. Morgan Stanley,*
507 F.3d 624 (7th Cir. 2007) ..............................................................20

*Drake-Sims v. Burlington Coat Factory Warehouse*,
330 F. App'x 795 (11th Cir. 2009) ...................................................................................16

*Eaves v. Work Force Cent. Fla.*,
2013 U.S. Dist. LEXIS 190815 (M.D. Fla. Dec. 2, 2013)..................................................18

*Feltmann v. Sieben*,
108 F.3d 970 (8th Cir. 1997) ............................................................................................18

*Frazier v. Sec'y, Dep't of HHS*,
710 Fed. App'x 864 (11th Cir. 2017) ...........................................................................17, 19

*Garcia v. ALS Educ., Inc.*,
2016 U.S. Dist. LEXIS 180681 (S.D. Fla. Dec. 30, 2016).........................................11, 14

*Goldsmith v. Bagby Elevator Co., Inc.*
513 F.3d 1261 (11 Cir. 2008) ...........................................................................................17

*Henderson v. FedEx Express*,
442 Fed. App'x 502 (11th Cir. 2011) ...............................................................................14

*Jones v. O'Reilly Auto, Inc.*,
2012 U.S. Dist. LEXIS 166472 (N.D. Ala. Oct. 22, 2012) ..............................................16

*Joseph v. Nichell's Caribbean Cuisine, Inc.*,
2012 U.S. Dist. LEXIS 154632 (S.D. Fla. Oct. 26, 2012).................................................19

Kiel v. Select Artificials, Inc.,
169 F.3d 1131 (8th Cir. 1999) (en banc) .....................................................................14, 17

*Leeth v. Tyson Foods, Inc.*,
449 Fed. App'x 849 (11th Cir. 2011) ...............................................................................16

*Martinez v. Workforce Central Fla.*,
2008 U.S. Dist. LEXIS 32627 (M.D. Fla. Apr. 21, 2008).................................................15

*Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)............................................................................................................9

*Minor v. Bostwick Laboratories, Inc.*,
669 F.3d 428 (4th Cir. 2012) ............................................................................................14

*Nix v. WLCY Radio/Rahall Communications*,
738 F.2d 1181 (11th Cir. 1984) ..........................................................................................9

*Pennington v. City of Huntsville,*
261 F.3d 1262 (11th Cir. 2001) ................................................................................19

*Perez v. Brands Mart Serv. Corp.,*
2011 U.S. Dist. LEXIS 82708 (S.D. Fla. July 28, 2011)..........................13, 14, 17, 19

*Reich v. John Alden Life Ins. Co.,*
126 F.3d 1 (1st Cir. 1997)..........................................................................................8

*Richmond v. ONEOK, Inc.,*
120 F.3d 205 (10th Cir. 1997) ..................................................................................11

*Sanchez v. Caregivers Staffing Servs., Inc.,*
2017 U.S. Dist. LEXIS 11259  (E.D. Va. Jan. 26, 2017) ..........................................5, 13

*Strickland v. Water Works & Sewer Bd.,*
239 F.3d 1199 (11th Cir. 2001) ................................................................................16

*Suchite v. Kleppin,*
819 F. Supp.2d 1284 (S.D. Fla. May 5, 2011)............................................................12

*Tex. Dep't of Cmty. Affairs v. Burdine,*
450 U.S. 248 (1981).................................................................................................12

*United States v. Four Parcels of Real Prop.,*
941 F.2d 1428 (11th Cir. 1991) ..................................................................................8

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar,*
133 S.Ct. 2517 (2013)..........................................................................................11, 14

*Urzola v. Thubelina Learning Ctr. Corp.,*
2012 U.S. Dist. LEXIS 121867 (S.D. Fla. Aug. 28, 2012) ..........................................12

*Vessels v. Atlanta Independent School System,*
408 F.3d 763 (11th Cir. 2005) ..............................................................................12, 19

*Williamson v. Adventist Health Sys./Sunbelt, Inc.,*
372 Fed. App'x 936 (11th Cir. 2010) ........................................................................16

*Winkelman v. AgStar Fin. Serv., ACA,*
2017 U.S. Dist. LEXIS 184281 (D. Minn. Nov. 7, 2017) ..........................................5, 13

Wolf v. Coca-Cola Co.,
200 F.3d 1337 (11th Cir. 2000) ................................................................................11

## **OTHER AUTHORITIES**

Statutes/Rules

Fed. R. Civ. P., Rule 56 ................................................................................. 8

29 U.S.C. §§201-216 ..................................................................................... 1

29 U.S.C. §7434 ............................................................................................ 1

Defendants, JAGUAR THERAPEUTICS, LLC, a Florida limited liability company ("Jaguar"), DOWNTOWN SPORTFIT REHAB & TRAINING, INC., a Florida for-profit corporation ("Downtown"), and CHRISTOPHER HERRERA, individually (collectively, "the Defendants"), through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby renew their request to this Court for the entry of summary judgment against Plaintiff SEUL SANTIAGO ("Plaintiff") with respect to Count II (Retaliatory Termination in Violation of FLSA) of Plaintiff's Second Amended Complaint [D.E. 60][1] and in support state as follows:

## BACKGROUND

On August 27, 2018, Plaintiff filed his Second Amended Complaint and Jury Trial Demand under 29 U.S.C. §§201-216 for Unpaid Overtime Violation and Retaliatory Discharge and 29 U.S.C. §7434 (hereinafter "Second Amended Complaint") asserting the following causes of action:  federal overtime wage violation (Count I), retaliatory discharge (Count II) and violation of 29 U.S.C. §7434 (Count III).  [D.E. 60].[2]  On September 6, 2018, Defendants filed an answer and affirmative defenses directed to the Second Amended Complaint (the "Answer").  [D.E. 64].  Defendants now file this instant motion renewing a request for entry of an order of summary judgment with respect to Count II along with the renewed Statement of Undisputed Material Facts and the Deposition Transcript of Seul Santiago taken on April 11, 2018.[3]

---

[1] Defendants previously moved for partial summary judgment with respect to Count II of the First Amended Complaint.  [D.E. 58].  By order dated January 17, 2019, the Court denied the motion without prejudice to file a renewed motion based on the filing of the Second Amended Complaint.  [D.E. 77].  Count II of the Second Amended Complaint contains the identical allegations contained in Count II of the First Amended Complaint.
[2] The Court dismissed Count III with prejudice on October 10, 2018.  [D.E. 74].
[3] Contemporaneous with filing this Motion, Defendants have filed a renewed Statement of Undisputed Material Facts ("Statement"), attaching Justin M. Toews' Affidavit in Support of Motion for Summary Judgment.  References to Mr. Toews' Affidavit are denoted "Toews Aff. at

## FACTS

Defendant Jaguar owns Defendant Downtown and both entities are in the business of providing physical therapy for patients, Downtown at a location in Downtown Miami and Jaguar at locations in Coconut Grove and elsewhere. Toews Aff. at ¶2. Defendant Dr. Christopher Herrera (hereinafter "Chris" or "Defendant Herrera") is the chief executive officer of Jaguar, overseeing the financial operations of the company through a management agreement with a third-party company. Justin Toews is the Director of Clinical Operations for Jaguar, overseeing the clinical staff, including front desk clerks and assistants, through a separate third-party management agreement. *Id.* at ¶¶1, 3. Through management agreements between Defendant Jaguar and Defendant Downtown, Justin Toews oversees the clinical staff that operates Downtown. *Id.* at ¶1.

From at least November 1, 2016 through June 12, 2017, Plaintiff worked for Jaguar or Downtown or both as there was a management agreement between those two entities in which certain Jaguar personnel were assigned to assist Downtown. Toews Aff. at ¶2, 5. Up until the end of May, Plaintiff worked under a salary arrangement and performed certain managerial and administrative duties for Jaguar and Downtown related to preparation of financial reports, as well as sporadic coverage of the front desk operations for the clinics.[4] Santiago Depo. at 110, lines 17-21 (acknowledging payment of salary); Toews Aff. at ¶5 (identifying Plaintiff's work responsibilities). *See also* Depo. Exh. 7 (listing salary as $42,000.00). During this period of

---

¶__" and "Toews Aff. Exh. __." References to the Deposition Transcript [D.E. 56] are denoted as "Santiago Depo. at __, lines __" and the deposition exhibits attached to the Statement are referenced as "Depo. Exh. __".

[4] For purposes of this Motion the dispute as to whether Plaintiff's duties rendered him an exempt administrative or professional employee during this time related to Count I of the Second Amended Complaint [D.E. 60] is irrelevant. *See, e.g.,* First, Second and Third Affirmative Defenses set forth in Defendants' Answer. [D.E. 64].

time, as Plaintiff testified to at his deposition, he was supervised solely by and reported only to Defendant Herrera with regard to all of the duties Plaintiff undertook for the companies, especially with regard to the financial reports prepared by and worked on by Plaintiff.[5]   *See* Santiago Depo. at 46, lines 2-4; *see also* Depo. Exh. 7 (listing Defendant Herrera as Plaintiff's supervisor); Toews Aff. at ¶5.

On May 24, 2017, Plaintiff sent an email to Defendant Herrera, Justin Toews, Dr. Geoff Rudy (owner of a company called Zenergy which had a management agreement with Jaguar to provide chiropractic services at both the Jaguar and Downtown locations [Toews Aff. at ¶2]) and Hiroshi Perera (a physical therapist who operated out of the Downtown location) under the heading "Seul work schedule" in which he complained that his shifts at Downtown were too long.  [D.E. 23-1] ("May 24th email").  In the May 24th email, Plaintiff wrote, in part:

> I am emailing you guys to let you know, that I can not keep working Tuesday and Thursday 13 hr. . . .
>
> Zenergy it's having must of the time a full schedule, and not 2 to 3 patient like the scheduled was planned.  Also, I'm not even concentrating or sometime I can not even work accounting because it is too much work.
>
> Yesterday, I could not even take a break during the day because the schedule wise.  Two weeks ago I worked 13 for 3 days in a row, because Chris asked me to work three days in a row from 7 am to 8pm. . . .

---

[5] During his deposition, Plaintiff testified that the information contained in a loan application (Depo. Exh. 7) he submitted to a bank in Puerto Rico with his mother in May 2017 was accurate as related to his employer (Jaguar Therapeutics), his salary ($42,000), his supervisor (Defendant Herrera) and his position which was listed as "Controller" for the company.  Santiago Depo. at 45-46: 46 lines 18-25:

> Q:   What's the position that's listed there?
> A:   It says controller.
> Q:   On a form you signed?
> A:   I did.
> Q:   And that your mother submitted to a financial institution for a loan with your approval and knowledge?
> A:   Yes.

I do not think this schedule for me it is even fair or legal.  Let me know how we can figure this out for the best of the company, Zenergy and my health.

As a result of the May 24th email, Defendants met with and communicated with Plaintiff on May 24th and 25th in an effort to understand and accommodated Plaintiff's request for a less demanding schedule, ultimately agreeing to restructure Plaintiff's position.   Specifically Defendants moved Plaintiff from a salaried management position and removed responsibilities related to the preparation of financial reporting documents for the companies.  Santiago Depo. at 210, lines 15-19.[6]  This was done with Plaintiff's approval.  As part of the change, because Plaintiff would now only be doing front desk work, Plaintiff also had a new supervisor – Mr. Justin Toews.  *Id.* at 214, lines 21-25; *see also Id.* at 215, lines 1-3 ("And you understood that, correct, that Mr. Toews would be your supervisor? Yes.").  *See also* Toews Aff. at ¶4.  Although now described by Plaintiff as a "demotion" (although that word is not contained anywhere in the Second Amended Complaint, much less Count II), Plaintiff supported the restructuring and his new role.  *Id.* at 212, lines 10-23.[7]

---

[6] During his deposition, Plaintiff testified as follows regarding the restructuring in May 2017:

> Q:    So the idea was that the financial reporting work that you were doing was going to be taken away from you and you were solely going to do front desk work, correct?
>
> A:    Yes.

[7] During his deposition, Plaintiff admitted the change from a salaried position to an hourly position as part of the restructuring in May 2017:

> Q:    Right, that you[] were going to change from being a salaried employee to an hourly employee and keep your front desk responsibilities, correct?
>
> A:    That they were going to change that until they figured out what they are going to do with me.

Santiago Depo. at 212, lines 3-9.

Prior to Plaintiff sending the May 24th email, Plaintiff and Defendant Herrera had a single email exchange in which Plaintiff requested switching from being a salaried employee to an hourly employee, in part in order to be eligible for overtime. Santiago Depo. at 199-204; Depo. Exh. 36. Although Defendant Herrera indicated in his email response that he would consider switching Plaintiff to an hourly arrangement, Plaintiff retracted his request to become an hourly employee, in part because he did not want to have deductions from his time made when he arrived at work late. *Id.* at 202, lines 11-14 ("So you wrote that telling Mr. Herrera that you didn't want to switch to being an hourly employee, correct? That's what it says there."). *See also* Depo. Exh. 36.[8]

As part of the restructuring, Plaintiff was scheduled to and committed to work the 8 a.m. to 2 p.m. front desk shift on Saturday May 27, 2017 at the Jaguar clinic location in Coconut Grove. Santiago Depo. at 208, lines 16-22. This shift encompassed the entire clinical operating hours on Saturdays. Toews Aff. at ¶7. Plaintiff had specifically communicated his availability to Justin Toews who was relying upon Plaintiff appearing for his shift. Toews Aff. at ¶¶6-7. It was important that the front desk shift be covered because Saturdays are typically days in which a high volume of physical therapy and chiropractic patients are seen throughout the entire shift. *Id.* at ¶7. Plaintiff failed to appear on May 27, 2017 for his shift, to comply with the call-in

---

[8] Even if this exchange is read to be a request for overtime, "[a] mere request for overtime pay without more details or reasoning as to why the employee is entitled to overtime compensation is not protected activity." *Sanchez v. Caregivers Staffing Servs., Inc.*, 2017 U.S. Dist. LEXIS 11259, at *8 (E.D. Va. Jan. 26, 2017) (granting defendant's motion for summary judgment). Moreover, Plaintiff's act of withdrawing the request is not protected activity that would support a retaliation claim. *See Winkelman v. AgStar Fin. Serv., ACA*, 2017 U.S. Dist. LEXIS 184281, at *13 (D. Minn. Nov. 7, 2017) (withdrawal of claim is not protected activity that would support a claim for retaliation). In fact, this exchange is not referenced anywhere in Plaintiff's Second Amended Complaint.

procedures or to provide any reasonable explanation for his absence. *Id.* at ¶9. Instead, Mr. Toews was required to rearrange his own personal plans and cover the entire shift. *Id.* at ¶13.

At the time of Plaintiff's employment, Jaguar had a policy manual that provided that:

> Failure to follow the call-in procedures as set out by this policy might lead to the time being deemed as unauthorized leave without pay and subject to discipline, up to and including dismissal from employment.

Toews Aff. at ¶11; *see also* Toews Aff. Exh. 2 (emphasis added). Plaintiff was aware of the call-in procedures, which were included in documents Plaintiff had provided to other employees as part of Jaguar's shared-drive Google documents. Toews Aff. at ¶12. Plaintiff did not respond to the telephone calls or emails that Mr. Toews sent on May 27, 2017 inquiring as to where Plaintiff was when he failed to show up at the start of the shift. *Id.* at ¶10; *see also* Toews Aff. Exh. 1.

Plaintiff eventually appeared at the Jaguar Coconut Grove clinic on May 27, 2017 around noon. *Id.* at ¶14. However, Plaintiff never provided an explanation for his failure to appear; to the contrary, Plaintiff was unapologetic about his absence and was disrespectful to Mr. Toews, his supervisor. *Id.* at ¶15.

As a result of Plaintiff's behavior on May 27th, Mr. Toews, as Plaintiff's supervisor, took independent action on his own without any consultation from others to terminate Plaintiff and gave him his two-week notice for violating company policies. Toews Aff. at ¶16. Plaintiff admitted during his deposition that Mr. Toews, as his supervisor, was solely responsible for terminating Plaintiff's employment. Santiago Depo. at 218, lines 3-6 ("So Mr. Toews, as your supervisor, gave you your- [two] week notice on Saturday, May 27, correct; you recall that now? A. Yes.").[9] Plaintiff was unable to say that Mr. Toews action on May 27th was an act of

---

[9] Plaintiff testified that Defendant Herrera was not present when he was terminated by Mr. Toews. Santiago Depo. at 218, lines 22-24 ("Yes, the 27[th] of May. I don't recall seeing

retaliation. Santiago Depo. at 221, lines 21-24 ("Do you have any reason to believe that Mr. Toews was retaliating against you in giving you your notice on May 27, 2017?  A. I don't know.")  Nor was Plaintiff able to recall any statements made by Mr. Toews at the time Plaintiff was terminated or any time thereafter that indicated in any way that Mr. Toews was retaliating against Plaintiff. *Id.* at 221, line 25, 222, lines 1-3 ("Did Mr. Toews say anything to you on that date or thereafter that led you to believe that Mr. Toews was retaliating against you.  A.  I don't recall.").  Plaintiff was allowed to complete his remaining time with the company in June 2017 without any incident.  Santiago Depo. at 218, line 25 through 221, line 2 (discussing remaining time worked). *See also* Toews Aff. at ¶20.

Mr. Toews had no prior knowledge of Plaintiff's communications with his former supervisor, Defendant Herrera, regarding Plaintiff's request for overtime either at the time it was made, at the time Mr. Toews terminated Plaintiff's employment or even when the lawsuit was filed.  Toews Aff. at ¶17.  Mr. Toews became Plaintiff's supervisor as part of Defendants accommodating Plaintiff's request in the May 24th email to work a less stressful schedule by shifting his employment duties and the structure of his employment.  Santiago Depo. at 212.  Mr. Toews determined on his own to terminated Plaintiff's employment.  Toews Aff. at ¶16 ("I did not consult with anyone about my decision [regarding Plaintiff's employment], including Defendant Christopher Herrera, nor did I have to.")  Plaintiff's May 24th email (or any other emails) had no bearing on Mr. Toews decision to end Plaintiff's employment relationship which occurred solely because of his own conduct on May 27, 2017.  Toews Aff. at ¶18 ("Although I was a recipient of Plaintiff's May 24, 2017 email, that email had no bearing on my decision to

---

[Defendant Herrera].  I don't know where he was.").  And in fact, Defendant Herrera was in Orlando, Florida that weekend.  Toews Aff. at ¶16.

end Plaintiff's employment relationship.  It was Plaintiff's own conduct on May 27, 2017 that drove my decision.").

## **STANDARD OF LAW**

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a). Rule 56(a) states relevant part, as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The moving party bears the burden of meeting this exacting standard. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). That is, "[t]he moving party bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex*, 477 U.S. at 323) (internal quotation marks omitted).  In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997). If the record presents factual issues, the Court must deny the motion and proceed to trial. *Adickes*, 398 U.S. at 157; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Despite these

presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. *Celotex*, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest upon his or her bare assertions, conclusory allegations, surmises or conjectures. *Id.* As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322-323. Thus, the mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. *Anderson*, 477 U.S. at 251; *Matsuchita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## ARGUMENT

"Federal courts do not sit to second-guess the business judgment of employers." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (reversing district court's denial of employer's motion for summary judgment). Florida employers are free to terminate employees for cause or for no cause given Florida's at-will employment jurisdiction, so long as they did not engage in discriminatory or retaliatory activity. *See generally Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as its action is not for a discriminatory reason."). Instead, to establish a retaliation claim, Plaintiff is required to prove that some unlawful animus motivated a challenged employment decision. *See,*

*e.g., Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1341 (11th Cir. 2000) ("It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [improperly] motivated."); *see also Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000) ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.").

Plaintiff admits that he does not have any direct evidence that in firing Plaintiff – i.e., the employment decision Plaintiff is challenging -- Mr. Justin Toews had any intent to retaliate against Plaintiff for any reason, much less a reason related to the FLSA or that Mr. Toews engaged in any conduct, verbal or otherwise, that would indicate a retaliatory motive on Mr. Toews' behalf.  Santiago Depo. at 221, lines 21-24 ("Do you have any reason to believe that Mr. Toews was retaliating against you in giving you your notice on May 27, 2017?   A. I don't know."); *id.* at 221, line 25, 222, lines 1-3 ("Did Mr. Toews say anything to you on that date or thereafter that led you to believe that Mr. Toews was retaliating against you.  A.  I don't recall."). Mr. Toews confirmed that he alone terminated Plaintiff for Plaintiff's conduct on May 27, 2017 when Plaintiff failed to appear for his shift, failed to follow company policy, and failed to provide an explanation for his conduct.  Toews Aff. at ¶15-16.

Without direct evidence, Plaintiff must therefore rely on circumstantial evidence to establish his claim and raise a rebuttable presumption that the Defendants acted illegally by establishing a prima facie case in the first instance. *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1322-23 (11th Cir. 2006).  In his complaint, Plaintiff has attempted to establish such a prima facie case by relying on a single May 24, 2017 email [D.E. 23-1] which does not specifically mention overtime, overtime pay or the FLSA, and which at best is merely a

complaint about the amount of hours worked, and may be a request for time off, a change in schedule or even additional compensation, none of which are considered protected FLSA activity. *Alvarado v. I.G.W.T. Delivery Syst., Inc.*, 410 F. Supp.2d 1272, 1279 (S.D. Fla. 2006) (granting summary judgment for failure to establish element of a prima facie case where "letters themselves do not appear to clearly assert rights under the statute in that they make no specific mention of overtime pay or invoke the FLSA."). *See also Garcia v. ALS Educ., Inc.*, 2016 U.S. Dist. LEXIS 180681, at *11 (S.D. Fla. Dec. 30, 2016) (granting motion to dismiss where allegations only concern nature of plaintiff's work, long hours and request for a raise). This is not sufficient to establish a prima facie case of retaliation. Moreover, even if arguendo the May 24th email could be read more expansively than its actual contents provide, Mr. Toews legitimate, non-pretextual reasons for terminating Plaintiff foreclose Plaintiff's retaliation claim.

### A.  Plaintiff Cannot Make Out A Prima Facie Claim For Retaliation

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)). Additionally, the Supreme Court has made it clear that causation now "'require[s] proof that the desire to retaliate was the **but-for cause** of the challenged employment action.'" *Austin v. Compass Group*, 2014 U.S. Dist. LEXIS 798, at *22 (N.D. Ala. Jan. 6, 2014) (*quoting Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)) (discussing retaliation in the context of Title VII claims) (emphasis added).

"To analyze FLSA retaliation claims, courts use the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA." *Urzola v. Thubelina Learning Ctr. Corp.*, 2012 U.S. Dist. LEXIS 121867, at *13 (S.D. Fla. Aug. 28, 2012) (citations omitted) (granting motion for summary judgment). *See also Suchite v. Kleppin*, 819 F. Supp.2d 1284 (S.D. Fla. May 5, 2011) (Martinez, J.) (granting summary judgment on FLSA retaliation claim).   Under the *McDonnell Douglas* framework, if Plaintiff can establish the elements of a prima facie case, Defendants are entitled to rebut the presumption of illegal conduct by clearly setting forth a non-discriminatory reason for the challenged employment decision. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981); *see also Chapman*, 229 F.3d at 1024 ("the employer's burden is merely one of one of production", not actual proof).   Plaintiff must then rebut the reasons articulated by proffering sufficient evidence to create a genuine issue of material fact, and failing to do so entitles the employer to summary judgment on Plaintiff's claim. *Chapman*, 229 F.3d at 1024-25.

Where, as here, Defendants provided legitimate reasons for Plaintiff's termination in the form of Mr. Toews Affidavit, Plaintiff must "come forward with sufficient evidence to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext . . ." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005).

Under this framework, Plaintiff's claim for retaliation must fail either because he cannot make out a prima facie claim for retaliation or because the legitimate reasons for his termination provided by Mr. Toews have not been rebutted as a pretext.

### 1.   The May 24th email is not protected activity.

Plaintiff is unable to make out the first element (protective activity) of a prima facie case.[10]  Where Plaintiff cannot establish one or more elements of a prima facie case, summary judgment is appropriate.  *See generally Perez v. Brands Mart Serv. Corp.*, 2011 U.S. Dist. LEXIS 82708 (S.D. Fla. July 28, 2011) (granting employer summary judgment on FLSA retaliation claim for failure to establish elements of prima facie case).

Plaintiff did not engage in protected activity under the FLSA by sending the May 24th email.  Unlike Plaintiff's earlier email that went solely to Defendant Herrera which specifically mentioned a request for overtime [Depo. Exh. 36][11], the May 24th email does not mention the word "overtime" or mention the FLSA or any other statute that would entitle him to receive overtime compensation.  *Perez*, 2011 U.S. Dist. LEXIS 82708, at \*27 ("Nowhere in the plaintiff's statements to management does the plaintiff assert his rights under the FLSA . . .") (granting summary judgment on FLSA retaliation claim); *Alvarado*, 410 F. Supp.2d at 1279 (granting summary judgment for failure to establish element of a prima facie case where "letters themselves do not appear to clearly assert rights under the statute in that they make no specific mention of overtime pay or invoke the FLSA.")

Instead, at best, the May 24th email (and subsequent emails) are a complaint "about the nature of [Plaintiff's] work and [his] long hours" and charitably a request for additional

---

[10] Plaintiff has identified only his termination as the adverse employment action he suffered. [D.E. 60] at ¶25 ("Defendants violated the FLSA's anti-retaliation provisions by terminating Plaintiff's employment . . ."). The fact of termination would satisfy the second element.

[11] Even if this exchange is read to be a request for overtime, "[a] mere request for overtime pay without more details or reasoning as to why the employee is entitled to overtime compensation is not protected activity." *Sanchez*, 2017 U.S. Dist. LEXIS 11259, at \*8 (granting defendant's motion for summary judgment). Moreover, Plaintiff's act of withdrawing the request is not protected activity that would support a retaliation claim. *See Winkelman*, 2017 WL 517633, at \*5 (D. Minn. Nov. 7, 2017) (withdrawal of claim is not protected activity that would support a claim for retaliation).

compensation or consideration. *Garcia*, 2016 U.S. Dist. LEXIS 180681, at *11 (granting motion to dismiss). Courts in this Circuit and elsewhere have long held that "[d]emands for more compensation are not protected activity." *Perez*, 2011 U.S. Dist. LEXIS 82708, at *26 (granting summary judgment); *Garcia*, 2016 U.S. Dist. LEXIS 180681, at *11; *Sanchez*, 2017 U.S. Dist. LEXIS 11259, at *8 (granting defendant's motion for summary judgment). *See also Alvarado*, 410 F. Supp.2d at 1279 (S.D. Fla. 2006) (granting summary judgment for failure to make out protected activity element). This is because not "every instance of an employee 'letting off steam' to his employer constitutes protected activity." *Minor v. Bostwick Laboratories, Inc.*, 669 F.3d 428, 439 (4th Cir. 2012).

As such, Defendants are entitled to summary judgment on Count II.

### 2. There is no causal connection between Plaintiff's termination and the May 24th email.

Plaintiff is unable to establish that sending the May 24, 2017 email was the "but for" cause of his termination. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. at 2533 (2013) (causation "'require[s] proof that the desire to retaliate was the **but-for cause** of the challenged employment action.'") (discussing retaliation in the context of Title VII claims) (emphasis added). While the close temporal proximity between May 24th (the date of the email Plaintiff relies upon) and May 27th (the date Plaintiff was given his notice) might, at first glance, superficially appear to establish the third element, the actual facts show that Plaintiff's intervening conduct is sufficient to break any circumstantial establishment of a causality connection. *See generally Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) ("intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity between his protected conduct and his termination") (*cited favorably by Henderson v. FedEx Express*, 442 Fed. App'x 502 (11th Cir. 2011) (intervening act of

misconduct can break causal connection between alleged protected activity and adverse action)). "Despite a close proximity in time between two events, evidence of a 'flagrant act of misconduct' in between the events can break the causal connection between them." *Cabrera v. Town of Lady Lake*, 2013 U.S. Dist. LEXIS 201324, at *64 (M.D. Fla. Mar. 28, 2013) (citations omitted); *see also Martinez v. Workforce Central Fla.*, 2008 U.S. Dist. LEXIS 32627, at *25 (M.D. Fla. Apr. 21, 2008) ("intervening event severed whatever inference of causation arose from the temporal proximity between [protected activity] and . . . termination.") (granting motion for summary judgment based on plaintiff's failure to establish element of retaliation).

Between the time that Plaintiff authored the May 24th email and May 27th, Plaintiff admits that (a) he was relieved of responsibility for certain accounting tasks he previously performed for Defendants; (b) he was given a different primary role to perform; (c) his schedule consistent with his altered responsibilities was changed; (d) he was transitioned from being a salaried employee to an hourly employee; and (e) he was transferred to a new supervisor, Justin Toews. *See* Santiago Depo. at 210 (removal of financial reporting work); 212 ("That they were going to change [from being a salaried employee to an hourly employee] . . ."); 215 (Justin Toews would be his supervisor). As part of this transition to his new role, Mr. Toews contacted Plaintiff to arrange his work schedule, which included checking on Plaintiff's availability to work the front desk shift at the Jaguar clinic on Saturday, May 27, 2016, consistent with Plaintiff's new responsibilities and position. Toews Aff. at ¶6. On May 26, 2017, Plaintiff confirmed directly to Mr. Toews that he was available to work the next day. Santiago Depo. at 208; Toews Aff. at ¶7. Plaintiff failed to appear timely for the Saturday shift and failed to use the call-in procedures to inform Mr. Toews that he would be absent. Toews Aff. at ¶12. Plaintiff failed to offer a satisfactory explanation, or any explanation, for his absence when he finally

came to the Jaguar clinic on Saturday, May 27th. *Id.* at ¶15. Plaintiff's termination solely by Mr. Toews in his capacity as Plaintiff's supervisor had everything to do with Plaintiff's own conduct on May 27th, and nothing to do with the May 24th email Plaintiff had sent. *Id.* at ¶18, 19.

This series of events breaks any superficial causal connection that Plaintiff may attempt to establish based solely on temporal proximity between the alleged protected activity and his termination. Courts have recognized that the refusal to perform assigned work is a proper independent motive for termination and will sever the causal connection assumption. *See, e.g., Williamson v. Adventist Health Sys./Sunbelt, Inc.*, 372 Fed. App'x 936, 940 (11th Cir. 2010) (plaintiff's failure "to perform the duties to which he was assigned provided a legitimate, non-discriminatory reason" for employment decision); *Leeth v. Tyson Foods, Inc.*, 449 Fed. App'x 849 (11th Cir. 2011) (refusal to perform tasks is legitimate reason for employment decision). *See also Jones v. O'Reilly Auto, Inc.*, 2012 U.S. Dist. LEXIS 166472, at *50 (N.D. Ala. Oct. 22, 2012) ("A willful refusal to perform an employee's assigned job duties is a legitimate, nonretaliatory reason for termination.").[12]

---

[12] Moreover, Plaintiff may not attempt to "bolster" his claim by referencing his earlier May exchange with Defendant Herrera regarding overtime [Depo. Exh. 36] as an alleged instance of protected activity. Regardless of the fact that Defendants challenge that characterization of the exchange, Mr. Toews was not aware of that exchange at the time he terminated Plaintiff. Toews Aff. at ¶17. *See Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct"). *See also Drake-Sims v. Burlington Coat Factory Warehouse*, 330 F. App'x 795, 804 (11th Cir. 2009) (affirming summary judgment; although plaintiff was fired just one week after she filed her discrimination lawsuit, she failed to rebut a regional manager's testimony that he was unaware of her lawsuit at the time he made the decision to terminate her; other managers may have been aware of her case, but their knowledge could not be imputed to the regional manager). *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207-08 (11th Cir. 2001) (employee failed to establish that employer fired him for engaging in protected activity; the short time lapse between his leave and Board's decision to fire him did not satisfy causality element in case where "unrebutted evidence [is] that the decision

"The fact the employer is a corporation does not relieve a plaintiff of the burden of showing a causal connection between the [alleged] protected conduct and the decision to take the adverse employment action." *Brungart*, 231 F.3d at 800.  Nor does it relieve Plaintiff from his "ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11 Cir. 2008).  Plaintiff's own intervening actions leading directly to his termination prevent him from establishing the third element of a prima facie case, specifically that his termination would not have occurred "but for" the alleged protected activity.  *See generally Kiel*, 169 F.3d at 1136.  *See also Cabrera*, 2013 U.S. Dist. LEXIS 201324, at *64.

As such, Defendants are entitled to summary judgment on Count II.

### B. Legitimate, Non-pretextual Reason For Terminating Plaintiff Entitles Defendants To Summary Judgment

"Even assuming the [P]laintiff can establish a prima facie case for retaliation, the [D]efendant[s] would still be entitled to summary final judgment as a matter of law because the[y have] shown that the plaintiff was terminated for a legitimate reason . . ." *Perez*, 2011 U.S. Dist. LEXIS 82708, at *30.  Even in situations where courts have questioned whether an intervening act of misconduct can undermine a plaintiff's prima facie case, courts have still found that the intervening act itself can provide a sound and legitimate nopretextual reason for a decision maker to terminate plaintiff despite a close temporal proximity to the purported protected activity.  *See also Frazier v. Sec'y, Dep't of HHS*, 710 Fed. App'x 864, 874 (11th Cir. 2017) (affirming trial court's grant of summary judgment where plaintiff failed to demonstrate

---

maker did not have knowledge that the employee [had engaged, or was attempting to engage,] in protected conduct") (internal quotes omitted).

that her "protected activity was the but-for cause of her termination[, d]espite the close temporal proximity between her protected conduct and her termination" where employer's decision was based on plaintiff's absence without leave and disrespectful communications to supervisor because this "negated any strong inference of causation that could be drawn from temporal proximity alone").

Plaintiff cannot ascribe an unlawful animus to Mr. Justin Toews' decision to terminate him for legitimate reasons – failure to appear for work and disrespectful attitude. Santiago Depo. at 221, lines 21-24 ("Do you have any reason to believe that Mr. Toews was retaliating against you in giving you your notice on May 27, 2017?  A. I don't know."); *id.* at 221, line 25, 222, lines 1-3 ("Did Mr. Toews say anything to you on that date or thereafter that led you to believe that Mr. Toews was retaliating against you.  A.  I don't recall.").    Mr. Toews believed at the time he terminated Plaintiff and continues to believe that Plaintiff's conduct in failing to appear for his shift on May 27th and the disrespectful attitude Plaintiff displayed when he did appear warranted Plaintiff's termination.  Toews Aff. at ¶19. *See, e.g., Eaves v. Work Force Cent. Fla.*, 2013 U.S. Dist. LEXIS 190815, at *31-*32 (M.D. Fla. Dec. 2, 2013) (granting summary judgment where "Plaintiff has not provided any evidence that . . . the sole decision-maker in Plaintiff's termination, 'did not honestly believe that [Plaintiff's] conduct warranted his termination."). *See also Feltmann v. Sieben*, 108 F.3d 970, 976 (8th Cir. 1997) (where there is no evidence that the decision maker holds unlawful animus, plaintiff has failed to show a causal relationship sufficient to raise a triable question).

Nowhere in Plaintiff's Second Amended Complaint is Mr. Justin Toews mentioned much less is it alleged that he held some unlawful animus towards Plaintiff that would be the basis for the retaliation claim or that the reasons Mr. Toews used to base his decision were pretextual.  "A

plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." *Clark v. Alabama*, 141 Fed. App'x 777, 788 (11th Cir. 2005); *see also Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001).   Refusals to perform assigned tasks or to appear for job shifts are considered valid reasons for terminating a person's employment. *See, e.g., Perez*, 2011 U.S. Dist. LEXIS 82708, at *31.   As such, Defendants have set forth sufficient reasons to satisfy their burden of production on this issue. *See Vessels*, 408 F.3d at 769-70 (recognizing that burden is exceedingly light)

Under the *McDonnell Douglas* framework, Plaintiff bears the burden of demonstrating that the reason provided by Mr. Toews for his termination is a pretext.   Here, however, Plaintiff is unable to refute the reasons given by Mr. Toews for his termination.   Santiago Depo. at 218 (Plaintiff cannot recall the reasons Mr. Toews provided).   At best, Plaintiff can only speculate as to the reasons for his termination.   But such speculation alone is insufficient to establish pretext. *See generally Joseph v. Nichell's Caribbean Cuisine, Inc.*, 2012 U.S. Dist. LEXIS 154632, at *18 (S.D. Fla. Oct. 26, 2012) (plaintiff's inability to offer more than speculation precludes a finding of pretext entitling employer to summary judgment).

Nor may Plaintiff point to any alleged improper animus that Defendant Herrera might have to terminate him.[13]   Mr. Toews has clearly testified that he terminated Plaintiff on his own, without any consultation from or input from Defendant Herrera.   Toews Aff. at ¶16.   Plaintiff admits that Defendant Herrera was not even present at the Jaguar clinic on May 27, 2017 when Mr. Toews terminated his employment.   Santiago Depo. at 218, lines 19-24. Moreover, Plaintiff

---

[13] For purposes of this Motion, this is a non-issue as the evidence here is that Justin Toews made his decision to terminate Plaintiff independent of anyone else. *See generally Frazier*, 710 Fed. App'x at 871-73 (affirming summary judgment where plaintiff could not demonstrate bias on part of actual decision maker or that he was influenced by other personnel).

cannot put forth any evidence beyond mere speculation that Defendant Herrera influenced or instigated the independent decision by Mr. Justin Toews to terminate Plaintiff, which is insufficient as a matter of law to establish pretext. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627-28 (7th Cir. 2007) (plaintiff's retaliation claim failed because she could not provide any evidence beyond mere speculation that her manager, who was the only individual at the company who had a retaliatory motive against her, influenced the decision to demote her).

## CONCLUSION

As established above, Plaintiff's claim for retaliation must fail either because he cannot make out a prima facie claim for retaliation or because the legitimate reasons for his termination provided by Mr. Toews have not been rebutted as a pretext, entitling Defendants to summary judgment as to Count II of the Amended Complaint.

PATHMAN LEWIS, LLP
*Attorneys for Defendants*
One Biscayne Tower, Suite 2400
Two S. Biscayne Boulevard
Miami, Florida 33131
Phone No: (305) 379-2425
Fax No:   (305) 379-2420

By:     */s/ Aaron W. Tandy*
         JOHN A. MOORE, ESQ.
         Florida Bar No.: 91820
         jmoore@pathmanlewis.com
         AARON W. TANDY, ESQ.
         Florida Bar No.: 190144
         atandy@pathmanlewis.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 25, 2019, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic filing generated by CM/ECF.

By:     */s/ Aaron W. Tandy*
         AARON W. TANDY, ESQ.

20