UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number: 17-22749-CIV-MARTINEZ-OTAZO-REYES

SEUL SANTIAGO,

    Plaintiff,

vs.

JAGUAR THERAPEUTICS, LLC, a Florida
limited liability company; DOWNTOWN
SPORTFIT REHAB & TRAINING, INC., a
Florida for-profit corporation; and
CHRISTOPHER HERRERA, individually,

    Defendant.

_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AS TO COUNT II

THIS MATTER is before the Court on Defendants Jaguar Therapeutics, LLC ("Jaguar"), Downtown Sportfit Rehab & Training, Inc. ("Downtown"), and Christopher Herrera's ("Herrera") (collectively, "Defendants") Renewed Motion for Summary Judgment as to Count II, [ECF No. 78]. Plaintiff Seul Santiago ("Plaintiff"), a former employee of Defendants, brings this action against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*, ("FLSA"). For the following reasons, Defendants' Motion for Summary Judgment as to Count II, [ECF No. 78], is DENIED.

Defendants move for summary judgment on Count II of Plaintiff's Second Amended Complaint – Retaliatory Termination in Violation of FLSA, [ECF No. 60]. Plaintiff contends that Defendants violated the FLSA's anti-retaliation provisions by terminating his employment because of his internal complaints that he was being forced to work overtime without

compensation. Defendants argue that Plaintiff cannot make out a *prima facie* claim for retaliation, and that legitimate, non-pretextual reasons exist for terminating Plaintiff's employment.

I.   **Background**

The following facts are undisputed unless otherwise noted. Where the facts are in dispute, they are taken in the light most favorable to Plaintiff.

Jaguar and Downtown operate physical therapy clinics and provide physical therapy services, [ECF No. 79] ("Def. SUF") ¶ 2. Jaguar owns Downtown. *See id.* ¶ 17. At all relevant times, Jaguar and Downtown were under the common ownership and financial control of Herrera, [ECF No. 60 ¶¶ 8, 9]. Plaintiff was employed by Jaguar and Downtown from on or about September 7, 2016 through June 16, 2017. *See id.* ¶ 11. Plaintiff performed financial administrative work for Jaguar and Downtown along with covering front desk operations. *See* Def. SUF ¶ 3. Plaintiff alleges that he complained to Defendants' management, both verbally and in writing, about working overtime for which he was not paid. *See id.* ¶ 4. Plaintiff relies on a May 16, 2017 email sent by him to Herrera in which he sent Herrera an invoice for past due overtime compensation and stated that he was entitled by law to extra compensation for the overtime he worked, [ECF No. 80] ("Pl. SUF Resp.") ¶ 9. The email, in its original format, provides:

> Chris,
>
> I'm sending you here the invoice for the hours "Overtime" from last week. Since by law, an employee overtime has to be pay "double" or "half pay per hour."
>
> So I choose half pay per hour.
>
> Please confirm so I can make the ACH. Since I really need it the money on my situation.
>
> Thanks.

Pl. SUF Resp. ¶ 9 at Ex. 20 to Ex. B (Justin Toews' deposition). That same day, Herrera responded to Plaintiff's email:

> I am not confirming that yet. By law the salaried person has to make below a certain amount. What is the deal? If we are switching to hourly are we going to deduct the hours you were late? Send me detailed invoice by the 30 min interval.

*Id.* In a further email exchange on May 24, 2017, that carried over to May 25, 2017, Herrera requested Plaintiff produce records and accounting for the overtime hours Plaintiff claimed he worked. *See* Pl. SUF. Resp. ¶ 9 at Ex. 21 to Ex. B. Plaintiff complied. *Id.* Herrera then challenged Plaintiff's representations. *Id.*

Plaintiff further relies on an additional May 24, 2017 email sent by him to Herrera, Justin Toews ("Toews"), Hiroshi Perera, and Dr. Geoff Ruddy. The subject of the May 24, 2017 email is "Seul Work Schedule," and, therein, Plaintiff complains about routinely working 13-hour days without "benefit," and states that he believes his schedule is not "fair or legal." *See* Def. SUF. ¶ 5-6; [ECF No. 60-1]; Pl. SUF. Resp. ¶ 9 at Ex. 22 to Ex. B. Herrera responded that same day to all the original recipients with his own email stating that Plaintiff's email was unprofessional and to ignore it. Pl. SUF Resp. ¶ 9 at Ex. 22 to Ex. B.

On May 26, 2017, Herrera sent an email to Plaintiff and Toews. In relevant part, the email provides:

> …
>
> You started saying you have health problems when you got demoted from bookkeeping duties. You are obviously trying to set me up for something.
>
> …This will be your official notice that you will no longer be in your current role with jaguar therapeutics.
>
> You will get a letter sent to your temporary work email on Monday morning letting you know your status with Jaguar Therapeutics. You will have a new role, title, pay structure, work duties and requirements. If you do not want this role, you have 24 hours to let me know if you want to stay with the company. If you do not want to stay

3

> with the company, you can give your 2 weeks notice.
>
> You will now directly report to Justin Toews and you do not have permission to contact me via email or phone from this point forward.

Pl. SUF Resp. ¶ 9 at Ex. 23 to Ex. B.

The next day, May 27, 2017, Plaintiff was 2 ½ hours late to work. Pl. SUF Resp. ¶ 24. At that time, Jaguar had a manual that provided that failure to follow the "call-in procedures...might lead to the time being deemed unauthorized leave without pay and subject to discipline, up to and including dismissal from employment." Def. SUF. ¶ 26. That same day, May 27, 2017, Toews terminated Plaintiff's employment.[1] At his deposition, Toews testified that he terminated Plaintiff for being a "no-show" to his shift. DEF SUF, Ex B. at 282:7-12. Plaintiff alleges his employment was terminated because of his internal complaints – in particular his written complaint in late May 2017. *See* DEF SUF. ¶ 7. On June 22, 2017, Herrera emailed Plaintiff the following:

> Please follow up with me in regards to any questions you have on the termination letter. If you do not have any questions by Friday, I will take that as you are unwilling to sign that termination letter. If that is the case, I will have a new one made, signed, and sent to you closing the situation.
>
> Also, I was having the computers swept for bugs, search histories (which was interesting), etc. (secondary to the install of the potential harmful software that you did on the computers when trying to fix the computer) and I found a resignation letter you did, dated a month ago. For my own knowledge would you share why you were going to resign a month prior to the email you sent to everybody which triggered the termination?

Pl. SUF Resp. ¶ 30 at Ex. 26 to Ex. B.

## II. Legal Standard

Under Rule 56, a court shall grant summary judgment if "the depositions, documents,

---

[1] The parties dispute whether Plaintiff was terminated because of his internal complaints requesting he be compensated for working overtime, or whether Plaintiff was terminated for violating Defendants' company policies – primarily, the call-in policy.

4

electronically stored information, affidavits or declarations, stipulations...., admissions, interrogatory answers, or other materials" on file "show [ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Rule 56 requires entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When a moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmovant, there is no genuine issue. *See id.* at 587.

At summary judgment, courts are required to view the evidence in the light most favorable to the nonmovant. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant. However, an inference based on speculation and conjecture is not reasonable." *Id.* "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original).

### III. FLSA

The FLSA makes it unlawful for employers to "discharge or in any other manner discriminate against any employee because such employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about

5

to testify in any such proceeding." 29 U.S.C. § 215(a)(3). A plaintiff may prove a claim for retaliation by using either direct or circumstantial evidence. *See Peppers v. Traditions Golf Club*, 457 Fed. Appx. 905, 906 (11th Cir. 2012) (citing *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008)).

Where the plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See Raspanti v. Four Amigos Travel, Inc.,* 266 Fed.Appx. 820, 822 (11th Cir. 2008). Under this framework, the plaintiff must first establish a prima facie case of retaliation. *Id.* "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'" *Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1342–43 (11th Cir.2000) (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 208–09 (10th Cir.1997)). The employer must then articulate a legitimate nonretaliatory reason for the adverse employment action. *See Raspanti,* 266 Fed.Appx. at 822. "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext." *Wolf,* 200 F.3d at 1343. When a plaintiff offers direct evidence of retaliation, "he need not make use of the *McDonnell Douglas* presumption, and conversely, when he does not have such direct evidence, he is required to rely on the *McDonnell Douglas* presumption." *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999).

### IV. Analysis

Defendants seek summary judgment on Plaintiff's retaliation claim. Defendants argue that summary judgment is proper as Plaintiff was not engaged in a protected activity; cannot show a

causal connection between his complaints and his termination; and legitimate, non-pretextual reasons warranted Plaintiff's termination. In response, Plaintiff argues that he has presented both direct and circumstantial evidence to prove his claim for retaliation.

    a. *Plaintiff has not presented direct evidence of retaliation*

The Court will first consider whether Plaintiff has presented direct evidence of retaliation. Plaintiff argues that he has presented direct evidence, relying on Herrera's words in a June 22, 2017 email to Plaintiff that Plaintiff's protected activity – his May 24, 2017 email to Herrera and others – *triggered* his termination. Plaintiff asserts that this evidence of retaliatory animus precludes summary judgment in favor of Defendant.

"Direct evidence is evidence that establishes the existence of [retaliatory] intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decision makers or remarks unrelated to the decisionmaking process itself are not direct evidence of [retaliation]." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citations omitted). "Direct evidence is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)).

Here, Herrera's June 22, 2017 email to Plaintiff does not qualify as direct evidence of retaliation. Herrera's June 22, 2017 email establishes no *direct* connection between Plaintiff's FLSA retaliation claim and the termination of Plaintiff's employment on May 27, 2017. First, there is record evidence to suggest that Toews was the decisionmaker in Plaintiff's termination. *See Standard*, 161 F.3d at 1330 ("remarks by non-decision makers…are not direct evidence of [retaliation]."). There is, however, record evidence to also suggest that Herrera was involved in

7

the decision to terminate Plaintiff. Accordingly, genuine issues of material fact exist as to the final decisionmaker in Plaintiff's termination. Second, by Plaintiff's own argument, acceptance of Plaintiff's contention requires the Court to make several inferences – (1) an inference that Toews was aware of Herrera's email prior to his decision to terminate Plaintiff, an email sent almost one month after Toews' decision to terminate Plaintiff; (2) an inference that Toews was aware of Plaintiff's request to be compensated for overtime, knowledge which Toews denied in his deposition (but which is contradicted by other record evidence, namely Plaintiff's May 24, 2017 email to Toews and others); (3) an inference as to the meaning of Herrera's use of "triggered" in his email, the meaning of which is disputed by Herrera in his deposition testimony; and, again, (4) an inference as to who the final decisionmaker was with respect to Plaintiff's termination. The need for such inferences itself prevents Herrera's June 22, 2017 email from constituting direct evidence of retaliation. Rather, where, as here, a "statement suggests, but does not prove, a [retaliatory] motive, then it is circumstantial evidence." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004).

  b. *Plaintiff has presented a prima facie case for retaliation*

The Court next considers whether Plaintiff establishes a prima facie case of retaliation.

   i.  Protected Activity

Defendants argue that Plaintiff did not engage in protected activity under the FLSA when sending his May 24th email as the email did not mention the word "overtime" or the FLSA. This Court disagrees.

To fall within the scope of the anti-retaliation provision of the FLSA, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and call for their protection. *See*

8

*Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 14 (2011). That said, informal complaints to an employer regarding wage practices or any conduct implicating the FLSA qualify as protected activity. *See EEOC v. White and Sons Enters.,* 881 F.2d 1006, 1011 (11th Cir. 1989); *see also Burnette v. Northside Hosp.,* 342 F.Supp.2d 1128, 1133-34 (N.D. Ga. 2004) (stating protected activity does not require specific FLSA reference so long as the activity or complaint concerns an employer's wage or hour practices). In other words, the fact that an employee does not refer specifically to the FLSA does not mean his or her informal complaint is unprotected, so long as the complaint concerns the employer's wage and hour practices. *See EEOC,* 881 F.2d at 1011 (finding that employees' informal complaint to their supervisor about unequal wages constituted "an assertion of rights protected" under the FLSA).

Here, Plaintiff argues that his May 16, 2017 and May 24, 2017 emails were complaints regarding unpaid overtime and constituted protected activity. This Court agrees. While Plaintiff does not specifically refer to the "FLSA," these complaints were accompanied by notifications to his superiors that he was working outside of regular hours without compensation. Indeed, in his May 16, 2017 email, Plaintiff provides an invoice for unpaid overtime hours; and in both emails, Plaintiff voices concerns that his compensation is not "legal" and that he is required to be compensated for overtime "by law." The context of those notifications forms a sufficiently clear basis for Defendants to understand that the complaints were assertions of Plaintiff's rights under the FLSA.[2] As such, this Court finds that Plaintiff's May 16, 2017 and May 24, 2017 complaints regarding compensation for the overtime hours he worked constitute a statutorily protected activity under the FLSA.

---

[2] Indeed, the Court notes that in Herrera's May 26, 2017 email to Plaintiff and Toews, Herrera states that, "You are obviously trying to set me up for something." Pl. SUF Resp. ¶ 9 at Ex. 23 to Ex. B.

9

ii. Causal Connection

Defendants next argue that no causal connection exists between Plaintiff's complaints and his firing. To establish a causal connection, a plaintiff must show that protected activity occurred, the decision maker was aware of the protected activity[3], and the existence of a "close temporal proximity between this awareness and the adverse…action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Close temporal proximity between protected conduct and an adverse employment action is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). Courts have held that a month between the protected expression and the adverse action is "not too protracted." *Gloetzner v. Lynch*, 225 F.Supp.3d 1329, 1359 (N.D. Fla. 2016) (quoting *Higdon*, 393 F.3d at 1220). Here, this Court cannot overlook the temporal proximity of Plaintiff's complaints (May 16, 2017 and May 24, 2017) and Plaintiff's demotion (May 26, 2017) and termination (May 27, 2017). Accordingly, sufficient circumstantial evidence exists to create a genuine issue of material fact of a causal connection.

While Defendants acknowledge the close temporal proximity between the May 24th complaint and Plaintiff's termination on May 27th, they argue that Plaintiff's "intervening conduct was sufficient to break any circumstantial establishment of a causality connection" – that is, Plaintiff's tardiness in showing up for work on May 27, 2017 and failure to use the call-in procedures,[4] [ECF No. 78 at 14]. However, Defendants' argument is misplaced.

At the *prima facie* stage, a plaintiff "need only establish that the protected activity and the adverse action were not wholly unrelated." *Frazier v. Sec'y, Dep't of Health and Human Serv.*, 710 Fed. Appx. 864, 870 (11th Cir. 2017) (quoting *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir.

---

[3] Defendants do not challenge this element. Accordingly, the Court will not address it.
[4] Defendants do not address Plaintiff's demotion.

10

1999)). "A plaintiff need not definitively establish causation." *Frazier*, 710 Fed. Appx. at 870. "[T]he prima facie case is designed to include only evidence that is objectively verifiable and either easily obtainable or within the plaintiff's possession." *Id.* (quoting *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005)). "Purported 'intervening acts' are unlikely to be 'objectively verifiable' in that sense. Rather, such acts are generally offered by the employer as the subjective reasons for its later actions. And in most cases…the plaintiff will argue that the purported intervening act did not occur or that it did not actually motivate the employer's adverse actions – in short, that it was pretextual," as Plaintiff does here. *Id.* To accept Defendant's argument would run the risk of requiring Plaintiff to prove pretext as part of his *prima facie* case – a requirement that is inconsistent with the general burden-shifting framework employed in these cases. *See id.* Accordingly, the Court finds Plaintiff has established a *prima facie* case of retaliation through close temporal proximity.[5]

### iii. Legitimate Reason

Finally, Defendants argue that their actions did not constitute retaliation because there was a legitimate reason to terminate Plaintiff. Defendants further contend that this reason was separate and unrelated to Plaintiff's complaints about unpaid overtime. Plaintiff, however, argues that a contextual review rebuts Defendants' argument as pretextual.

Where, as here, a plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in

---

[5] Moreover, the Court notes that even if it were to find that temporal proximity can be broken by Plaintiff's intervening acts, such as his tardiness, Plaintiff has raised a genuine issue of material fact from which a reasonable jury could find that his tardiness was not an intervening act. Indeed, given the record presented to the Court and the many contradictions and inconsistencies found therein with respect to Plaintiff's termination, to decide the genuine issues of material fact would require the Court to make credibility determinations, which it simply cannot do.

11

*McDonnell Douglas*. *See Raspanti,* 266 Fed. Appx. at 822. "Under this framework, if the plaintiff establishes a *prima facie* case and the employer proffers a legitimate, non-discriminatory reason for the adverse employment decision, the plaintiff may then show that the employer's proffered reason was not true but instead was a pretext for discrimination." *Chambers v. Florida Dep't of Transp.,* 620 Fed. Appx. 872, 876 (11th Cir. 2015) (citations omitted). That said, "[t]he burden shifting framework of *McDonnell Douglas* is not, and was never intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Id.* at 877 n. 5. Instead, a triable issue of fact arises "if the record in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.*

To establish pretext, a plaintiff "must demonstrate that the proffered reason was not the true reason for the employment decision" and may demonstrate this either "directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

Here, Defendants contend that Plaintiff was fired for arriving late to this May 27, 2017 shift, failing to follow the company's call-in procedures, and providing insufficient explanations for his tardiness. Defendants do not provide an explanation as to why Plaintiff was demoted on May 26, 2017 before being terminated. On the other hand, Plaintiff argues that his termination was pretextual because of his continued complaints regarding the payment of overtime, the last of which occurred three days before he was terminated. While Defendants rely on Toews' affidavit to justify Plaintiff's termination, Plaintiff argues that Toews' affidavit is undermined and contradicted by other record evidence, including the sworn statements of Herrera in answers to

12

interrogatories and Herrera's June 22, 2017 email to Plaintiff. This Court agrees.

Upon review of the record, Plaintiff has established a *prima facie* case of retaliation under the FLSA. The Court finds that the record evidence viewed in the light most favorable to Plaintiff- including the relevant depositions, affidavits, answers to interrogatories, and the May 16, 2017, May 24, 2017, and June 22, 2017 emails – presents a convincing mosaic that would allow a reasonable jury to infer a retaliatory act by Defendants when terminating Plaintiff's employment. As such, there is a genuine issue of material fact as to whether Plaintiff's complaints were in such close temporal proximity to Plaintiff's termination that it would negate Defendants' proffered legitimate and non-retaliatory reason for his termination.

Accordingly, for the foregoing reasons and after careful consideration, it is hereby:

**ORDERED and ADJUDGED** that Defendants' Renewed Motion for Summary Judgment as to Count II, [ECF No. 78], is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this 17 day of May, 2019.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All Counsel of Record